DULL v. REYNOLDS ELECTRIC FLASHER MFG. CO. et al.

(Circuit Court, N. D. Illinois, E. D.    April 22, 1908.)

No. 27,614.

1. PATENTS—SUIT FOR INFRINGEMENT—ESTOPPEL.

The sale by a partner to his copartner of his interest in the firm, without warranty, does not estop him, on subsequently acquiring a patent covering articles of the kind manufactured by the firm, to maintain a suit against his former partner for infringement not committed during the partnership term.

2. SAME—INFRINGEMENT—ELECTRIC FLASH SIGNS.

The Sinclair & Goltz patent, No. 566,874, for an electric distribution machine for operating electric flash signs, discloses invention and is valid, although narrow in scope; also held infringed.

3. SAME.

The Dull patent, No. 780,641, for an automatic electric switch, held not infringed.

In Equity.    On final hearing.

Geo. T. May, Jr., for complainant.
Charles Turner Brown, for defendants.

161 F.—9

KOHLSAAT, Circuit Judge. This suit is brought to restrain infringement of patent No. 566,874, issued to W. E. Sinclair and Wm. Goltz, September 1, 1896, for an electric distribution machine, and claims 1 and 4 of patent No. 780,641, issued to complainant January 24, 1905, for an automatic electric switch, both patents pertaining to electric sign flashing machines.

Preliminarily to the consideration of the case upon the merits, there is raised in the record a question of estoppel. Complainant acquired title to the Sinclair patent on December 30, 1904. It is in evidence that complainant and defendant Ziegler were copartners doing business under the firm name of "Reynolds Electric Company" from November, 1899, to April, 1901. It is defendant Ziegler's contention that complainant approached him, Ziegler, with the statement that he was about to take up the manufacture of what he termed "commutators" for operating electric light signs, for which he thought there was a large field; that, if defendant would furnish the capital, he was satisfied an extensive and profitable business could be built up; that defendant Ziegler thereupon furnished the necessary funds, and the firm thereupon entered upon the manufacture of electric flashing machines of the charged drum and brush contact type. Afterwards the city authorities prohibited the use of these devices, and the firm took steps to employ knife switches, with the result that in September, 1901— four or five months after the termination of the partnership—a flasher with a knife switch was completed by Ziegler as successor to said firm property. It appears that at the time of dissolution neither Dull nor Ziegler knew of the existence of the patent in suit. The partnership was terminated by the sale of Dull's interest to Ziegler in April, 1901. In the amended answer Ziegler charges that he bought the good will of the firm, including all interest in the electric flashing business. From the record it appears that what was sold was the tools and stock on hand. No attention was paid to the good will. Both parties continued to use the name "Reynolds" in their business enterprises, without objection on the part of the other, and the record discloses nothing from which it can be deduced that any kind of a warranty attended the conveyance of Dull's interest to Ziegler. At or soon after the dissolution, Ziegler organized the "Reynolds Electric Company," and subsequently changed the name to "Reynolds Electric Flasher Manufacturing Company," claiming to be the successor of the old firm. Under this state of facts, defendants insist complainant is estopped from claiming infringement of the patent in suit. The evidence does not justify the contention. While it would, probably, bar complainant from the recovery of any damages for acts done during the partnership term, if any, if they amounted to infringement, it cannot be held that Dull's rights under a patent acquired several years after the termination of the partnership, in the absence of fraud, and of anything in the nature of a warranty, were waived by the partnership acts. It is not satisfactorily shown that the flashers manufactured, or the acts done during that period, constituted infringement of the patent in suit. Whatever rights defendants may have in the premises may be protected on the accounting, should the patent and the charge of infringement be sustained.

The Sinclair patent in suit is the main reliance of complainant. The Dull patent is an improvement thereon. The claims of the Sinclair patent under consideration read as follows:

"1. An electric-distribution machine comprising a series of automatic quick-break knife-switches, each of which is for incorporation as part of an electric circuit, a power-shaft, a counter-shaft in gear with the power-shaft, and a series of rotarily-adjustable switch-closing cams carried by the counter-shaft.

"2. An electric-distribution machine comprising an automatic quick-break knife-switch for incorporation as part of an electric circuit, a power-shaft, a counter-shaft, a switch-closing cam on the counter-shaft, and a reducing-gear in train with the shafts.

"3. An electric-distribution machine comprising a series of automatic quick-break knife-switches, each of the same being for incorporation as part of an electric circuit, a power-shaft, a counter-shaft, a series of switch-closing cams on the counter-shaft, and a reducing-gear in train with the shafts.

"4. An electric-distribution machine comprising a series of automatic quick-break knife-switches, each of the same being for incorporation as part of an electric circuit, a power-shaft, a counter-shaft, a series of switch-closing cams rotarily adjustable on the counter-shaft, and a reducing-gear in train with the shafts."

Those of the Dull patent are as follows:

"1. In a device of the character described, a frame, an actuating-shaft journaled in said frame, a gang of switch units associated with the frame, each switch unit of said gang comprising a stationary contact member, and a movable switch-blade, connections interposed between the switch-blades of said several units to unite the same for simultaneous movement, a roller operatively associated with one of said switch-blades for movement therewith, and a cam mounted upon the actuating-shaft arranged to co-act with said roller to move the switch-blades of said gang."

"4. In a device of the character described, a frame, an actuating-shaft mounted in the lower part of the frame, a gang of relatively stationary switch members mounted in the upper portion of the frame, a gang of co-acting movable switch members pivoted there-beneath for movement into contact therewith, and a cam device carried by the shaft arranged and adapted to move said movable members of the gang upward into contact with their stationary members, and to permit them to return to their initial position under the influence of gravity."

"My invention," says Sinclair, "has for its object to provide a simple, economical, effective, compact, easy running, and durable distribution machine for electrical use to cause automatic alternate energizing and de-energizing of electric circuits at predetermined intervals." The original application embraced eight claims, every one of which was rejected by the examiner upon the prior art. Original claim 5 was saved by amendment and constitutes the present claim 1. It reads as follows, viz.:

"An electric distribution machine comprising a series of quick-break knife-switches, each of which is for incorporation as part of an electric circuit, a power-shaft, a counter-shaft in gear with the power-shaft, and a series of switch closers carried by the counter-shaft."

The amendments were made by inserting the word "automatic" before the word "quick," and substituting the words "rotarily adjustable switch-closing cams" for the word "switch closers." Thus limited, the claim was allowed.

The invention, if it amounts to such, is manifestly very narrow. Every element is old. So far as appears from the record, the complainant

and defendant, severally and as a firm, were the first to place upon the market commercially and the first to give name to so-called "electric flashers." Prior to the formation of the partnership, Dull had installed some kind of an electric flasher at the Chicago World's Fair. He describes it as being of the charged drum or brush type, employing a sliding contact. He further says it was not mechanically successful. The flasher first manufactured by the Reynolds Electric Company—consisting of Dull and Ziegler—was similar to the 1893 device, and, like it, attained no commercial success. In the meantime, upon July 25, 1895, Sinclair filed his application for the patent in suit. At the time of the said partnership and for considerable time thereafter it was allowed to lie dormant. Even at the date of the perfection of the flasher by Ziegler, in the fall of 1901, it was altogether buried in the tomes of the patent office, oblivious of its own commercial importance. While, theoretically, defendant Ziegler was chargeable with knowledge of its existence, yet it seems that he, aided, perhaps, by Dull, reinvented the flasher without any suggestion that it had been already discovered.

There is some attempt in the evidence to show that the Sinclair patent was and is inoperative, but it is not sustained. For the purposes of this hearing, it must be deemed in force for whatever it is worth so far as these objections are concerned.

When freed from the influence of the cam or cams, it is upwardly and quickly snapped out of contact with the jaws of the stationary switch member, whereby, it is claimed, arcing is substantially avoided. The chief difference between the Dull patent in suit and that of Sinclair, so far as it is involved in this suit, is found in the fact that Dull's switch blade is returned to a circuit opening position under the influence of gravity. The returning spring shown in Dull's device, it is claimed, draws the blade when released from the influence of the cam, down as far as the point of its discharge from the stationary jaws, whence it is carried down to open current position by gravity, while in the alleged infringing devices the blade descends to open circuit position under the influence of a spring, which gives the descent a speed in excess of that supplied by gravity alone. None of these elements are new. Defendant contends that the claims of the Sinclair patent call for little, if any, more than a quick-break knife-switch and a means of operating it. It does not appear that this form of switch had before been used in operating electric flashers. It does, however, appear that it operates here precisely the same as in the other arts where it is found, as, for instance, in controllers, motors, and also in the Tomlinson patent No. 487,355 of December 6, 1892, for an apparatus for distribution of electricity. In this latter patent this switch-closing cam reciprocates, while Sinclair rotates. The rotarially adjustable switch-closing cam of Sinclair is adjustable simply because the cams can be unscrewed and reaffixed to the shaft. This, too, is old. The reducing gear is in no important sense different from that of the prior art. It is more intricate than that of the Reco machine and defendant's other patented and alleged infringing machine.

At the time of Sinclair's alleged invention the only flasher shown by the record to be in existence was the World's Fair device above re-

ferred to, or flashers of that type. They were not practicable, and had created no demand. Perhaps this is why Sinclair's patent was so long ignored, although it does not appear that he made any attempt to introduce it. The principal thing he did was to substitute the automatic quick-break knife-switch for the old drum or brush switch. In doing this he was obliged to employ several other theretofore unused elements as applied to flashers, although they were all employed in devices for controlling the distribution and automatic regulation of lighting and extinguishing electric lights in various combinations. These consist in (1) a power-shaft; (2) a counter-shaft; (3) switch-closing cams; (4) cams made adjustable on the counter-shaft rotatively; (5) a reducing gear in train with the shafts. It is not deemed invention to multiply the single switch into a gang, even though operated by one cam. The patents cited by the examiner, and upon which the original claims were rejected, disclose the general principles of the patent under consideration. Whether or not the assembling of the above elements by Sinclair, in view of the prior art, involves anything more than mechanical skill, is a very close question. The advance over the prior art is appreciable, and the result is such as to persuasively argue invention. This, taken together with the presumption accompanying the grant by the Patent Office, the adjustable arrangement of the cams upon the shaft, the simplicity of the whole, the application of the reducing gear for the regulation of the cam speed, the want of which in the drum-brush style of machines is so serious a feature, and the hold the device in suit has gained upon the flasher art in commerce, after its merits were at last appreciated, is thought sufficient ground for holding the Sinclair patent to be valid—very narrow, it is true, yet valid.

Nor is there room for doubt that defendants' devices are infringements. The movable switch blade is moved down in defendants' machines, while in complainant's it is drawn up—in both cases by means of a spiral spring. Whether it is influenced in defendants' case by gravity is uncertain. Even if it were, the case would not be changed. As above stated, Dull's patent, No. 780,641, application for which was filed January 12, 1904, so far as it bears upon the questions in issue, relates essentially to this matter of returning the movable switch member to circuit opening position, under the influence of gravity. In this respect I am of the opinion that this feature was employed by Ziegler as far back as 1901. I do not deem it of importance herein.

For the reasons set out, there is grave doubt whether any damages or profits can be allowed in this case growing out of the infringement. This question, however, can be considered in its place. Complainant may prepare and present the form of a decree in accordance herewith, finding the Sinclair patent valid and infringed, and dismissing the bill as to the Dull patent.